Good morning, counsel. Good morning, your honor. I'm Judge Dennis together with Judge Wehner and Judge Duncan. We're here this morning with your panel. Your case is Juan Jose Gonzalez-Penaloza v. Robert Wilkinson, Acting Attorney General. I'm here first, Mr. Daniel Penaloza. You may proceed. Yes, your honor. Thank you. Good morning and may it please the court. Your honors, this case arises out of a board of immigration appeals denial of a request for administrative closure. Mr. Gonzalez-Penaloza made the request for administrative closure in order to apply for a provisional unlawful presence waiver before the USCIS. The regulations that the Department of Homeland Security has requires that an applicant for this waiver have their removal proceedings administratively closed in order to be eligible to seek that benefit. The Board of Immigration Appeals denied the request for administrative closure based solely on the Attorney General's decision in matter of Castro-Tomb. In matter of Castro-Tomb, the Attorney General overturned more than 30 years of board precedent, providing that immigration judges and the Board of Immigration Appeals had the authority to administratively close cases. Well, I don't think that's true, Mr. Cardillo. The administrative closure for many years, for over 20 years, I believe, had to be by consent of both parties. And it wasn't only until 2012 when it was recognized that the IJ could grant administrative closure without the government's consent? That is correct, your honor. And the basis of that decision in matter of abiticium that you referred to is because the board decided that it was inappropriate to provide one party the authority to be able to single-handedly decide the adjudication of a case. The board did that as well with matters related to continuances. In request for continuances before matter of Hashmi, the government had the opportunity or was given extra weight to determine whether or not the court should continue a case or, as in this case, administratively close a case. Well, I guess my point is, I understand what you're saying. My And then abiticium came along and changed the rule. And then a few years after that, the case, I don't remember the initials of the case, W something, created a multi-factor test. And now in Castro-Toomey, the attorney general says, well, look, I don't want the use of administrative closure unless it's explicitly required by RAG or by judicial settlement. Now, I guess I look at that history. None of those decisions were based on anything explicit in the RAG. And I look at that history and I ask myself, well, why can't the attorney general channel the use of administrative closure under his discretion to interpret the RAGs? The attorney general has absolute authority to control the delineate how he wants the immigration courts to view administrative closure. But what the attorney general did in Castro-Toomey was say that they never had the authority to administratively close cases. And the issue with that. Well, I don't I don't agree with that. I think he says he's trying to channel the use of a procedural tool that, in his view, resulted in hundreds of thousands of cases backlogged. And he's not saying that the IJs can't use it. He's saying that they have to use it by explicit regulation. They just can't use it as a general matter. You know, that's different from saying they can never use it. I mean, obviously they can use it, but it's a general matter. If we take that view, your honor, we ignore the precedent for administrative closure. Going back to 1988, it's been an evolution of when it is appropriate and necessary to use administrative closure. Initially, it was used to administratively close cases where it wasn't appropriate, where in absentia hearings should have been held, and removal orders should have been issued. And what happened is throughout the years, from 1988 in Matter of Amico up to Abitizian, it's been limited in its use and when it is, in fact, appropriate. Matter of WIU, which you referred to in 2017, was, in fact, a decision where the respondent was attempting to reopen or recalendar that case, and the government was opposing that and wanted the case to remain administratively closed. And the board issued two very important decisions in that case. One of them was that the person opposing administrative closure had to provide persuasive argument. And the second was that courts could not consider the use of administrative closure or enforcement priorities of an agency in order to grant or deny administrative closure. Well, let me ask you this. So the one sort of preliminary question here is whether the RAG that everybody's talking about is ambiguous with respect to the general use of administrative closure. And now we have two circuits who say it is unambiguously allowed, that it unambiguously allows that procedure. And now we have another circuit that says it unambiguously disallows it. So how can we say it unambiguously goes either way when now we have like nine different circuit judges look at it and come to totally different? Why wouldn't we just say it's ambiguous with respect to the use of the administrative tool? Well, the language in the regulation provides unambiguously in our position a bag of tools that immigration judges in the board could use in managing their documents. Now having those tools does not mean that those tools cannot be misused. As with anything, administrative closure can and has been misused in the past. It's not our position that it's something that can be used in the majority of cases. And I think the sixth circuit in their decision ignored the fact that this is not a final decision. They provide a de facto argument that it is in fact a final disposition of a case when that is not its intent. Well, so are you conceding then that administrative closure is not a disposition of the case? That is correct, your honor. We have argued in multiple cases that administrative closure is not a final disposition of a case. Well, doesn't the reg condition the use of whatever tool on its ability to dispose of cases in a timely manner? It is a portion of the regulation, yes, your honor. And so the regulation requires disposition of a case in a timely manner, but it also permits a judge or the board to take any action that's appropriate and necessary. And this tool is a very useful tool when it is in fact appropriate to get there. And there are many circumstances where this tool, calendaring, scheduling deadlines, scheduling pre-trial conferences or orders, different tools that immigration judges and the board of immigration appeals have at their disposal in order to get to the end, which is the disposition of a case. There are multiple circumstances where it is inappropriate for a judge to maintain active docket or an active case before them if it doesn't have control over the agency that's adjudicating an application or a petition that's outside of their court. This comes into play specifically in this case, where the regulations that the Department of Homeland Security issued require administrative closure. The government, I'll ask the government about this too, but the did not obtain administrative closure. There is an alternative way for him to get the, what do you call it, the provisional waiver through another part of the same regulation. Now I'll ask the government to sort of explain that to me, but do you disagree with that, that if he doesn't get the administrative closure, he cannot get the provisional waiver? There's a big difference, between the practical application of what the government cites on that issue and the reality. So on paper, could a applicant that is in removal proceedings with the final order of removal request what's called an I-212 waiver or permission to reapply for admission while they're in the country unlawfully with an order of removal and avoid having to have the case administratively closed? Yes. The problem is that the practical application of that is not normal. Once a final order of removal is issued, the alien is usually removed from the country. They're not allowed to remain in the United States, and so it deems that argument inapplicable in this circumstance. The practical matter is that those applicants are not permitted to stay in the U.S. any time for the time period that they're waiting for that I-212 to be adjudicated or the provisional waiver to be adjudicated while they have a final order of removal. So one of the most important things that we need to recognize, at least to distinguish this case from that in the Sixth Circuit, is the fact that the tools that are being used in this case are to get to a disposition of a case. The tool of administrative closure is others can be used, as in this case, cases where an applicant is seeking a U visa with USCIS, cases where USCIS has exclusive jurisdiction over an adjustment of status, or where the applicant is in TPS status or a DACA recipient. In the past, DACA recipients used to have their cases administratively closed, and that was the end. At this point, the pursuit is to have them have a final removal order hanging over their DACA status, so that if there was ever any lapse in their status, that would just result in the ability to automatically remove them. So it's important to note that, and I do also want to address the issue of deference in the case. I don't think that it's a grand issue. I think that the Chevron argument is simply inapplicable in this case, as this is not an agency interpretation of a statute. It's an agency interpretation of regulation. And speaking to that note, this very court has found that the matter of Castro-Tum was, in fact, a new rule, a new interpretation of the agency. And in a case called Fedoa, even though it was unpublished, it recognized after the matter of Castro-Tum that the issue was a new rule. I was on that panel, so I remember that case. And that said that a retroactive application of this would create due process problems, which, I mean, that's understandable. But that case specifically said we weren't addressing the validity of Castro-Tum. That's correct. But it did recognize, Your Honor, the fact that it is a new interpretation. I mean, there's no question that it's a new interpretation. I guess with respect to our deference, the issue is some of the other circuits have found that our deference shouldn't apply because it would create unfair surprise. And I guess my question is, this is an administrative procedural tool that is really up to the, I mean, even if it were available, I would assume it'd be up to the discretion of the IJ. I mean, how could someone develop reliance interests on something like that, as opposed to, say, the seminal case there is, I think, Christopher, which is about how the, I forget what industry it was, but their classification of certain workers with respect to the labor rules, it would have created a huge retroactive imposition of liability. This is a procedural tool. So it's tough for me to see how creates this sort of reliance interests. Do you see what I'm saying? Help me with that. I do see Your Honor's point. I think the difference is that this is not just a tool such as scheduling order or something that is not managed by board precedent. There is actual case law that has decided or determined when it is, in fact, appropriate and necessary. In fact, not only so, for example, in this case, let's say there were no Castro tomb, would Mr. Gonzalez-Piñuelos automatically be entitled to administrative closure? There's nothing in the regulations or in the board precedent that required judges or the board to grant administrative. So I mean, how could he rely on it then if he's not entitled to it? Well, it's the board is saying that he that they could not even consider. Oh, I know that. But I'm saying if there's no Castro tomb and we go back to the old rules, whatever that is, WWV, whatever, he's not entitled to administrative closure, is he? No, Your Honor, but he is entitled to at least a determination. And this court in Hernandez-Constillo has actually decided that the determination in matter of a veticium, the six factors that are listed, whether who is seeking the administrative closure, what the government's position is, whether the individual qualifies for the benefit they're seeking. This court in Hernandez-Constillo recognized that that is a good, judicially reviewable legal framework. And this court exercised jurisdiction to review decisions or denials of administrative closure, along with three other circuit courts, the eighth, the fourth and the seventh in those cases. And they recognized matter of a veticium providing the legal framework for review in cases where, although it's not an entitlement, it is something at least that should be a decision that the individual has a right to see. And in this case, the difference is that under matter of Castro tomb, the board said that they have no authority to even review the applicants. Mr. Gonzalez Benalosa's request for administrative closure. And I'll see I'm out of time unless I have other questions. Good morning, Your Honors. Let me introduce the court, Remy Darucha Afogio, representing the United States Attorney General. Your Honors, I'd like to begin by addressing petitioner's claims regarding the unlawful presence waiver, which Judge Duncan did say, you know, he would like the government to address. Denying administrative closure is not the end of the road for petitioner. It is not necessary for the outcome that petitioner seeks. As he concedes in his reply brief, and even here in his argument, he can still apply for the waiver. So Castro tomb makes no difference to the outcome he seeks. And while not getting administrative closure could lengthen the process, it does not take away what he's seeking. Petitioner can seek that waiver even now as we speak, because he has a final order of removal already. And that unlawful presence waiver allows him to go ahead and apply now. To the government's knowledge, petitioner has not taken those steps to date. And ironically, he has been sitting on his rights and unduly prolonging the process that he seeks to shorten through these proceedings. And as to his earlier statement that it doesn't work in reality, compared to what is on paper, petitioner still has to leave the country for months. As we know that petitioner would probably need a waiver of his final order of removal, which he could file in conjunction with the unlawful presence waiver. So it really makes no difference in the grand scheme of things, whether casterton applies here or not. Miss Roshadu, I'm going to mess up your name. So every time I do it, you know, I've read Castro tomb. It's lengthy. Why, in your view, why does the attorney general do that? I guess. Why does he say no more administrative closures except in certain circumstances? What is I guess I'm looking to for you to explain somewhat more for me, who is not as familiar with the inner workings of the immigration system, because the normal, even the normal judge, I'd say, speaking for myself, looks at that and says, well, it sounds like a continuance. You know, it sounds like just a procedural tool. Why go to the trouble of saying we're not going to do that except in specific circumstances? Okay. First of all, Congress gave the attorney general the authority to interpret the immigration regulations. And he exercised that authority in matter of Castro tomb to correct his delegates misunderstanding of that authority. And it is within his purview to use the, to state that a prior use of administrative closure was inappropriate under the regulations in Castro Tom, which was a very well reasoned decision. The attorney general laid out the reasons going through the years and stating that, that the Castro, the decisions, the use of administrative closure had been abused over the years, and it did not result in the disposition of the case as the regulation states. Instead, cases were being taken off the court's docket and hanging in limbo for years. And the attorney general wanted to make sure that the regulations were being followed. As you rightly pointed out earlier, your honor, there have been a lot of changes over the years. And the attorney general finally did state the rule and said that there was no express grant for the immigration judge or the board to grant administrative closure. The board also went out. I mean, interrupt you. But when I have a TCN came up, I forget, maybe 2012. Um, as I understand it, it changed the rule with respect to administrative closures. Did the number of administrative closures then go up considerably after advertising? I'm not sure whether it was after the TZM, but the attorney general and pastor to deep states, um, they'd mentioned years, um, where, um, administrative closure went up. They had the attorney general talked about a statistics from 1980 to 2000, 2011, there were 283,366 closures. I've achieved the end was decided in 2012. And so after I've achieved him, it looks like in a mere six years from October, 2011 to September, 2017, um, there were 215,285 additional cases of administration. It sounds like they doubled. So yes, your honor. So in that regard, it did. And the attorney general was concerned about that fact. And he wanted to a conclusion based on the regulations. And, um, I'm sorry, your honor, did you say something? I mean, okay. Yes. So based on that fact, the, um, attorney general came up with matter of Castro to, to curb these excesses. And more importantly, the fact that administrative closure is not granted anywhere expressly to an immigration judge or a board or the board. The fact that over the years, um, the, um, board and the immigration judge have been using administrative closure does not make it right or correct. And that is precisely what the attorney general did in his purview. And it was within his purview to do so. Let me ask you this, um, ma'am, uh, the, we have two circuit cases as I read them that say unambiguous, the reg, it's unambiguous that it allows administrative closure. Yeah, I guess in all circumstances. And then you have another circuit that says it's unambiguous that it doesn't allow them in the circumstances that the attorney general is addressing. So what's the, what's the government's position with respect to the ambiguity or not of the reg, which doesn't mention administrative closure. Yes. You're a nice, very interesting. The government's position, um, is that the regulations are unambiguous because they never explicitly give IJS or the board a general authority to administratively close matters. Both sections of the regulations, specifically cabin immigration judge and board powers in two relevant respects. First, they have only the powers and duties delegated to them by the act and by the attorney general through regulation, a general power of administrative closure is not delegated by either the statute order regulations. And second, is it different in your view than a continuance? Because I don't, I don't recall the reg saying that the IJ can continue a case. It is different from a continuance. Yes, your honor. It is because the continuance is an administrative tool used by the judge to regulate the conduct of the proceedings. Maybe they need to get further documents, but there is an end in sight with administrative closure. There is no end in sight. The case hangs in limbo. There is no disposition whatsoever, which is counter to the language in the regulation. And that is the main difference here. With a continuance, the case remains on the docket. It remains on the court's docket and the immigration judge is able to track it. But with administrative closure, the case just goes into some sort of limbo and nobody tracks it and it is lost. And so that is a major difference between the two. What does it take for the government under the current rules, I'm not aware, to sort of resurrect an administratively closed case? Is there, what does the government have to do? The government actually has to show, and the burden is on the government, to show that there is a reason, you know, it has to be a reasonable reason to reopen the case, to make, perhaps maybe there has been a criminal conviction or something that would interest the, that would lead to the immigration DHS filing maybe another NTA or proceeding with charges, different new charges or different charges. That's usually the point at which administrative closure is reopened. But the DHS has to prove, the DHS cannot just request it, DHS has to prove that there is a bona fide reason for seeking reopening of those cases. So basically our position is that the regulation is unambiguous. And even assuming that for some reason the court feels that the regulation is ambiguous, Master of Castreton is entitled to our all kinds of deference as a reasonable interpretation of the regulations. Again, the regulations do not explicitly contemplate a general power of administrative closure. If one is to be found, it must be in the words, any action consistent with their authorities under the Act and regulations. But as discussed, there is no such authority under the Act and regulations. And the Attorney General reasonably noted that such an authority would be inconsistent with the regulatory command to both dispose of cases and to resolve cases in a timely manner. The Attorney General would, as I read it, would allow administrative closure where the regulations specifically call for. Is that right? Because aren't there five categories of cases? Yes, there are five categories of, well, four categories of cases and then a judicial settlement. And those are the ones spelled out specifically in the regulations. I'm talking about disposition, which is a key word here, Your Honor. Disposition here does not mean leaving a case to hang in limbo, which is what happens in a vast majority of these cases where administrative closure is employed. The regulations specify expeditious, fair, and proper resolution of matters pending before an immigration judge. An expeditious would not involve a situation where proceedings can be parked indefinitely off the court's radar and where up to two-thirds of those cases never make it back before the immigration court. This goes against the express intent of the statute and the regulations. And there is nowhere in the regulations authorizing an IJ to close a case outside the five specific circumstances enumerated in the regulations. At base, really, Your Honor, the statute, not the regulations, provides the immigration judge, provides that they are subject to such supervision and shall perform such duties as the attorney general shall prescribe, which means that when the attorney general says they don't have that power, then they don't have the power. They just cannot assume a power that is not there. I'd like to bring your attention to the attorney general's comments in footnotes three and nine of Castro 2 because it applies to this specific case. There, the attorney general stated that those regulations apply only to DHS. That is the Provisional Unlawful Presence Waiver. And they don't provide authorization for an IJ or the board to administratively close an immigration proceeding. The fact that it is in DHS's may expand the authority of immigration judges and the board. And that regulation in DHS's on DHS's side of the Code of Federal Regulations cannot be an independent source of authority for administrative closure. We do realize, Your Honor, that here the attorney general needed to balance and weigh two different sections in the regulations and make a judgment about the best course for the agency. That is, while the IJs should take necessary and appropriate actions to dispose of cases, they also must resolve cases in a timely manner. Castro Tom was the result of the IJ's judgment after balancing those considerations. And the it may not have been the only correct resolution of the tension between the two sections, but the attorney general's choice of this one is consistent with the plain language of regulation. Let me ask you just a practical question. I know that there's been a rulemaking to change the reg and that is effective. It doesn't apply to this case, right? No, it does not apply to this case. It's only effective as of January 15th, 2021? Yes, Your Honor. Okay. So going forward, we have an explicit section in the explicit text in the reg that says that says essentially, I don't know if it's exactly the same, what Castro Tom says via adjudication. Yes, Your Honor, it basically says the same thing. And going back, going to the issue of retroactivity concerns, which is raised by the new regulation, Castro Tom actually touches on that. The attorney general realized the issue in this case, where an alien is seeking a provisional unlawful presence waiver. And he specifically stated that all cases that are administratively closed may remain closed unless DHS or the party requests re-calendaring. Now here in this case, Petitioner again, sat on his rights. He basically did not seek administrative closure until one and a half years after Castro Tom, even though he had the I-130 approved in December, 2018, and didn't request administrative closure until October, 2019, way after Castro Tom was decided. So he sat on his rights. And again, the government reiterates that Castro Tom really has no bearing on this case. Petitioner still has to leave the and he can right now still apply for the administrative closure that he seeks. And again, the attorney general was not taking away a right. He stated quite clearly in Castro Tom that cases that are administratively closed may remain closed. And so there is no taking away of rights as Petitioner says. And besides, administrative closure confers no legal entitlement to indefinite closure because it is discretionary and revocable anyway. And so there is no right at all to this. So in closing, your honors, if you don't have any other questions, the attorney general's interpretation of the interpretation, it reflects a fair and considered judgment based on the attorney general's examination of the law, regulations, and policy. And administrative closure is a procedural matter implicating his expertise in administering the immigration laws. The attorney general's position constitutes his authoritative, official position on the issue. To the extent that the attorney general's decision constitutes a change from the agency's prior practice, the Supreme Court recognized in Kaiser that deference may still apply even under those circumstances. And even if the court feels that our Kaiser deference does not – do not apply here, we would ask the court to consider skewed more deference because the attorney general's decision is persuasive. Unlike the decisions of the Fourth and the Seventh Circuits, who the government contents made a mistake in their decision, and those decisions are not binding on this court anyway, the decisions there were incomplete. They were an incomplete textual analysis, and they were internally inconsistent. The courts failed to analyze the entire text of the regulations. They took out the for the disposition of such cases phrase and relied only on the part that said that the immigration judge may take action that is appropriate and necessary. But it has to be calls the validity of the court's analysis into question and deprives them of the power to persuade. The Fourth Circuit's decision and the Seventh also emphasize the phrase any action, but it fails to acknowledge that the regulations provide for any action necessary and appropriate for the disposition of cases. So based on these, your honors, we ask that the petition for review should be denied. Thank you. Thank you, your honor, and I'll address a few of the issues brought up by the government. First of all, the government categorically miscategorizes the facts behind administrative closure, and they misstate the law regarding recalendering of administratively closed cases. First, cases do not go into limbo whenever a case is administratively closed. If that was the case, the attorney general would be unable to track and provide the statistics that he did in matter of two. There's the other statistics that are listed in the amicus brief that provide exactly the statistics on when and where those cases are closed and why. At this point, the latest statistics are about 292,000 cases that remain administratively closed. And of those cases, the Department of Homeland Security either requested or agreed to administrative closure. The decision in matter of abiticium did not increase the number of cases. That increase in statistics was done primarily because the department was misusing administrative closure for prosecutorial discretion. As I said earlier, having the tool of administrative closure does not mean that it cannot be misused. And it is our position that it was inappropriate use to use administrative closure for prosecutorial discretion. And there's about 90,000 cases that were issued with the agreement or at the request of the Department of Homeland Security. In your view, could the attorney general in a different adjudication say you can't use administrative closure with respect to prosecutorial discretion? Would that be okay under the rec? In fact, the agency did, your honor. In matter of WIU in 2017, that's whenever the board held that you cannot consider, a judge cannot consider the enforcement priorities of the agency as a basis for granting or denying administrative closure. Okay, and what text, what regulation did the, I guess that was the, I don't know if that was the BIA or the attorney general. What, what regulatory text did it rely on to make that decision? WIU? Again, it, it fed off of the decision in matter of Avitesian. What regulatory text in matter of Avitesian rely on to make its decision with respect to administrative closure? Matter of Avitesian relies heavily on the regulations that we are discussing today. Today, 1003.10B and 1003.1D12, which provide both the board and the immigration judges the authority to take any action that is appropriate and necessary in to, in order to dispose of a case. So that is consistent with law. The government also argues that recalendering a case places a heavy burden on the government and misapplies the law. The burden on the government is actually quite small. It's a reasonable, a persuasive reasoning. There's no standard as low as that under our normal judicial review of cases. In fact, the government's position is taken into account from the initial grant or request for administrative closure. It is one of the biggest factors as to whether the government opposes and the reason for the opposition. And it is also taken into account whenever the immigration, the immigration courts are looking at recalendering a case. When you look at the numbers of cases that have been closed, when they are reopening, this demonstrates the use of this tool as a tool rather than a disposition. Reopening of more than a great majority, more than 60% of the cases that get recalendered ultimately end in relief for the alien that had his case, his or her case administratively closed. A number of those are terminated. They are given lawful permanent resident status. There's about 10% of those cases that obtain the waiver that Mr. Gonzalez-Penalosa was seeking and then get a voluntary departure in order to complete the process of the consular process that they have to go through. Those cases are resolved in approximately your average of four months after recalendering of administrative closed cases. And so the use of this tool as a time saver for the immigration courts is in fact demonstrates a timely use of this tool in order to timely dispose and adjudicate the cases before the courts. Finally, in regards to the new regulations, I think that this defeats the government's argument in matter of Castro-Tum and would render matter of Castro-Tum irrelevant. If matter of Castro-Tum is correct, that the authority never existed, then it would not be required to issue new regulations stating the exact same fact that Castro-Tum in fact stated. With that, I'm out of time and I'll ask the court, they grant this petition for review and find the request that was requested in our brief. Thank you, sir. Thank you. This case will be submitted and called the next case for the day.